# United States Court of Federal Claims

No. 15-1574
Filed: November 29, 2016

_____

|  |  |
|---|---|
| EARL O. BOYAJIAN, individually and on<br>    behalf of all others similarly situated, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

_____

*Noah Michael Schubert*, Schubert, Jonckheer & Kolbe, LLP, San Francisco, CA, attorney for plaintiff.

*Brian A. Mizoguchi*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

*SMITH*, **Senior Judge**

This case comes before the Court on defendant's motion to dismiss. Plaintiff, Earl O. Boyajian, individually and on behalf of all others similarly situated, seeks just compensation under the Fifth Amendment Takings Clause for reserve tonnage raisins taken from raisin growers by the United States Department of Agriculture ("USDA" or "Agency"). Plaintiff argues that he, along with any potential fellow class members, was never compensated for the Raisin Administrative Committee's ("Committee") taking of his reserve raisins throughout 2007-2010. Defendant alleges that plaintiff's claims for the 2007-08, 2008-09, and 2009-10 crop years should be dismissed because they are barred by the statute of limitations. Defendant's motion to dismiss is fully briefed and ripe for review.

## I.    Background

During the Great Depression, Congress established the Agricultural Marketing Agreement Act of 1937 ("AMAA") in order to help farmers obtain fair value for their agricultural productions. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1358 (Fed. Cir. 2005) (citing *Pescosolido v. Block*, 765 F.2d 827, 828 (9th Cir. 1985)); 7 U.S.C. § 602 (2000).

The AMAA directs the Secretary of Agriculture ("Secretary") to issue "marketing orders" which regulate the marketing and sale of agricultural commodities. 7. U.S.C. § 608c (2012).  The Act allows the Secretary to "issue marketing orders, upon the request of the affected producers, regulating the sale and delivery of various commodities, including raisins, 'in order to avoid unreasonable fluctuation in supplies and price.'" *Id*. (citing *Parker v. Brown*, 317 U.S. 341, 368 (1943); *Kyer v. United States*, 369 F.2d 714, 716-17 (1966), *cert. denied*, 387 U.S. 929 (1967); 7 U.S.C. §§ 608c, 602(4) (2000)).

On or before August 15 of each crop year, the Committee meets to review shipment and inventory data and "other matters relating to the quantity of raisins of all varietal types."  7 C.F.R. § 989.54(a).  After the review, the Committee typically recommends a reserve pool, at which point the USDA usually implements the reserve by issuance of a final rule, which determines the percentage of each farmer's crop that will be "free tonnage" and the percentage that will be "reserve tonnage."  7 C.F.R. § 989.55.  Then, on or about October 5 of each year, raisin handlers are required to set aside a certain percentage of their raisins as the reserve tonnage for the current crop year.  7 C.F.R. § 989.166(b)(1).  The handlers do not pay the raisin producers for the reserve raisins.  Complaint (hereinafter "Compl.") at 4.

Once the reserve raisins have been set aside, the Committee "acquires title to the reserve raisings that have been set aside, and decides how to dispose of them in its discretion."  *Horne v. Dep't of Agriculture*, 135 S. Ct. 2419, 2424 (2015).  Once the Committee determines what to do with the reserve raisins, the proceeds from those raisins are used to pay the Committee's administrative expenses and export subsidies to certain handlers.  Any remaining proceeds are given to the growers on a pro-rata basis.  7 C.F.R. §§ 989.53(a), 989.66(h).  On June 22, 2015, the Supreme Court held in *Horne v. Dep't of Agriculture*, that the California Raisin Handling Order's reserve pool requirement was "a clear physical taking" that violated the Fifth Amendment's Takings Clause and for which just compensation was due.  135 S. Ct. at 2428.

Plaintiff alleges that, in each of the 2007-08, 2008-09, and 2009-10 crop years, plaintiff was only paid for his free tonnage raisins.  Compl. at 6.  Plaintiff further alleges that "[t]he Committee on behalf of the USDA physically appropriated Plaintiff's and the Class members' Reserve Raisins without providing just compensation to the Class members."  *Id*. at 8.  Defendant argues that the Court does not have jurisdiction to hear this case because each of the claim years at issue accrued more than six years prior to the December 28, 2015 date on which Mr. Boyajian filed his claim, and are thus barred by the statute of limitations.  Defendant's Motion to Dismiss (hereinafter "MTD") at 8.

## II.   Discussion

### A.   Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United

States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

When the Court's subject matter jurisdiction to hear a case is challenged, the plaintiff has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 250.  In determining the propriety of summary judgment, the Court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### B.      Statute of Limitation

Defendant argues in its motion to dismiss that plaintiff's takings claims for the 2007-08, 2008-09, and 2009-10 crop years are barred by the statute of limitations.  MTD at 9.  In making this argument defendant points out that the takings claims ripened in mid-October of each crop year and argues that plaintiff only had 6 years from each crop year's mid-October taking during which to make their claims without running afoul of the statute of limitations. *Id*.  Essentially, defendant argues that plaintiff's earliest potential claim not barred by the statute of limitations would be for the 2010-11 year, as plaintiff filed this claim on December 28, 2015.  This Court does not agree.

Plaintiff argues that his takings claim did not accrue until the Supreme Court decided *Horne*, because "prior to that ruling, he had 'no reasonable probability of successfully prosecuting his claim against the government.'"  Plaintiff's Response to MTD (hereinafter "P's Resp.") at 11 (citing *United States v. One 1961 Red Chevrolet Impala Sedan*, 457, F.2d 1353 (5th Cir. 1972) (*Red Chevrolet*)); *Horne*, 135 S. Ct. 2419.  Essentially, plaintiff alleges that, due

-3-

to the ruling in *Evans v. United States*, his claims were inherently unknowable.  *Neely v. United States*, 546 F.2d 1059 (3d Cir. 2011); *see also Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 61-62 (2009); *Evans*, 74 Fed. Cl. 554 (2006), *aff'd*, 250 F. App'x 321 (Fed. Cir. 2007, *cert. denied*, 552 U.S. 1187 (2008).  As a result, plaintiff argues that the statute of limitations began to run on June 22, 2015.  P's Resp. at 13.

The plaintiff is essentially attempting to apply a version of the accrual suspension rule.  The accrual suspension rule "suspends the statute of limitations when "an accrual date has been ascertained, but plaintiff does not know of his claim."  *Petro-Hunt,* 90 Fed. Cl. at 61 (quoting *Japanese War Notes Claimants Ass'n, Inc. v. United States*, 373 F.2d 356, 358-58 (Ct. Cl. 1967)).  Essentially, the accrual suspension rule suspends the accrual of a claim against the United States, "for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed."  *Id.* (quoting *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003)).  This rule applies when "the change in circumstance arises out of a decision that overrules or alters prior precedent, with the claim deemed to have been tolled until the modifying decision was made."  *Id.*

Defendant argues, in the alternative, that the accrual suspension rule does not apply here because the decision in *Evans* was not a binding precedent.  Defendant's Reply in support of MTD (hereinafter "D's Reply") at 18.  Courts must look to the reality of a decision's effect, not just to the formal question of whether the decision is binding precedent.  It would certainly raise ethical questions for an attorney to file litigation in a case where the client was sure to lose.  In such a case the attorney would be wasting the client, the government, and the Court's time and resources.  In cases where the facts are dramatically different or a long period has gone by since the original decision there may be an ethical basis for relitigating an issue.  However, the plaintiff and his attorney should not be made to speculate that filing may breach an ethical duty and non-filing may forfeit a potential claim.  Such a legal standard would undercut rational legal decision making in a changing world.  It is important for courts to look not only to the letter of the law, but also to principles of equity in making determinations.  The decision in *Evans*, while not technically binding, effectively barred plaintiff from making a takings claim.  It was not until the decision in *Horne* that plaintiff's claims were legally defensible.  It would be unreasonable to expect the plaintiff to file a takings claim that he reasonably believed was barred by *Evans* precedent.  As such, we must deny defendant's motion to dismiss the claims during the 2007-08, 2008-09, and 2009-10 crop years.

**III.     Conclusion**

For the reasons set forth above, defendant's MOTION to dismiss or in the alternative for summary judgment is **DENIED**.  On or before Tuesday, December 20, 2016, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge